IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JERALD SHOUSE,                    )
                                  )
             Petitioner,          )
                                  )
v.                                )      Case No. CIV-06-1012-F
                                  )
JUSTIN JONES,                     )
                                  )
             Respondent.          )

## REPORT AND RECOMMENDATION

The Petitioner, Mr. Jerald Shouse, is a state inmate requesting an evidentiary hearing

and a writ of habeas corpus.  The Court should deny both requests.

BACKGROUND

I.    Facts

Police officers entered a residence and found the Petitioner in the kitchen, standing

next to a plate containing five grams of methamphetamine.  *See* Transcript of Jury Trial, Vol.

I at pp. 169-70, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. Sept. 7-9, 2004)

("Trial Transcript"); Trial Transcript, Vol. II at pp. 248-50, 322, 324, 342.  Nearby were a

set of electronic scales and a camera bag containing 23.3 grams of methamphetamine.  *See*

Trial Transcript, Vol. II at pp. 251, 281, 324.  A subsequent search yielded:

● burnt blister packs consistent with those containing pseudoephedrine,[1]

_____

[1] *See* Trial Transcript, Vol. II at p. 252.

- a mason jar containing liquid methamphetamine and coffee filters,[2]

- starter fluid,[3] and

- night-vision goggles.[4]

The State charged Mr. Shouse with trafficking in methamphetamine after two or more felony convictions. Information, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. filed Aug. 13, 2003). After a trial, the jury found the Petitioner guilty[5] and recommended a sentence of life imprisonment without the possibility of parole.[6] The trial court entered judgment accordingly. *See* Order of Committal to County Jail, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. filed Sept. 9, 2004).

II.   Procedural History

Mr. Shouse appealed, and the Oklahoma Court of Criminal Appeals ("OCCA") upheld the conviction. *Shouse v. State*, Case No. F-2004-1032 (Okla. Crim. App. Sept. 26, 2005) ("OCCA Opinion on Direct Appeal"). The state district court denied post-conviction relief,[7] and the OCCA affirmed.[8]

---

[2]   *See* Trial Transcript, Vol. II at pp. 279, 281, 324.

[3]   *See* Trial Transcript, Vol. II at p. 296.

[4]   *See* Trial Transcript, Vol. II at p. 278.

[5]   Trial Transcript, Vol. III at pp. 553-54.

[6]   Trial Transcript, Vol. III at p. 575.

[7]   *Shouse v. State*, Case No. CF-2003-384 (Kay Co. Dist. Ct. May 3, 2006).

[8]   *Shouse v. State*, Case No. PC-2006-558 (Okla. Crim. App. June 20, 2006).

The present action followed.

## STANDARD FOR HABEAS RELIEF

The applicable standard turns on whether the OCCA has addressed the merits of the claim.  If not, the federal district court exercises its independent judgment on the claim.  *See*, *e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).  If the OCCA did rule on the merits, the federal district court bears a "secondary and limited" role.  *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998).

For factual issues, the habeas court determines only whether the state tribunal's findings were reasonable based on the evidence presented in state court.  *See* 28 U.S.C. § 2254(d)(2) (2000).

For legal issues, habeas relief is available only if the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (2000).  Thus, "an absolute prerequisite for petitioner's claim is that the asserted constitutional right on which it rests derive in clear fashion from Supreme Court precedent."  *Carter v. Ward*, 347 F.3d 860, 863 (10th Cir. 2003) (citation omitted); *see also Parker v. Scott*, 394 F.3d 1302, 1308-1309 (10th Cir. 2005) ("Even relevant precedent of this circuit cannot prevail absent clear Supreme Court authority." (citations omitted)).

A decision is "contrary to" Supreme Court precedent only if that court had rendered an opinion dispositive of the claim.[9]  These circumstances may exist when the state court had:

- applied a rule that conflicted with governing Supreme Court precedents or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (citation omitted).

A similar test governs the objective reasonableness of the state court's legal rulings:

[A] decision is "objectively unreasonable" when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law.  It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision.  In other words, . . . the state court decision must be "at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable."

*Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006) (citation omitted).[10]

---

[9]    The Tenth Circuit Court of Appeals has quoted with approval the following principle: "'If no Supreme Court precedent is *dispositive* of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be contrary.'"  *Anderson v. Mullin*, 327 F.3d 1148, 1155 (10th Cir. 2003) (quoting *Vieux v. Pepe*, 184 F.3d 59, 63 (1st Cir. 1999) (emphasis in original)).

[10]    Mr. Shouse contends that deference is unavailable because the state courts did not cite or discuss federal law.  Petitioner's Brief in Support of Petition for Writ of Habeas Corpus at p. 50 (Sept. 19, 2006) ("Petitioner's Brief in Support").  This contention is invalid as a matter of law.  *See Webber v. Scott*, 390 F.3d 1169, 1174 (10th Cir. 2004) ("Deference is accorded to a state court result even when the state court fails to discuss any federal law rationale for its decision or cite to any federal authority." (citation omitted)); *see also Welch v. Sirmons*, 451 F.3d 675, 687 (10th Cir. 2006) (applying deference under the Antiterrorism and Effective Death Penalty Act of 1996 even though the OCCA had not cited "any federal cases in reaching its decision"), *petition for cert. filed* (U.S. Dec. 18, 2006) (No. 06-8508).

ALLEGED VIOLATION OF THE FOURTH AMENDMENT
GROUND ONE

In his first ground for relief, the Petitioner alleges that law enforcement officials had violated the Fourth Amendment through a warrantless entry into the home.  Petitioner's Brief in Support at pp. 3-12.  The Respondent opposes consideration of the merits in light of *Stone v. Powell*, 428 U.S. 465 (1976).  He is correct.

"Under *Stone*, habeas relief shall not be granted on the ground that the trial court admitted evidence obtained in violation of the Fourth Amendment despite the judicially-created exclusionary rule, provided that the defendant had an opportunity for full and fair litigation of the Fourth Amendment claim."  *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (citing *Stone v. Powell*, 428 U.S. 465, 481-82 (1976)).   That opportunity may exist either in the state district or appellate courts.  *See Stone v. Powell*, 428 U.S. 465, 494-95 n.37 (1976) ("we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review").

The Petitioner does not deny that he had an opportunity to litigate the Fourth Amendment claims in state court.  Instead, Mr. Shouse argues that his opportunity was not "full and fair" for two reasons:

- the state courts had failed to apply "the correct and applicable law,"[11] and

- the state courts had failed to conduct a hearing requested on the truthfulness of statements by Officers Price and Grose.[12]

Both arguments obscure the fact that Mr. Shouse had full and fair opportunities to litigate the Fourth Amendment issue in both the district court and the OCCA.

Mr. Shouse contends that both courts had misapplied the applicable law. *See supra* pp. 5-6. But the present issue turns on the availability of a full and fair opportunity to litigate the claim rather than the legal correctness of the state courts' holdings. As a result, this claim is invalid as a matter of law. *See*, *e.g.*, *Hesselberg v. Price*, 976 F.2d 740, 1992 WL 230170, Westlaw op. at 2 (10th Cir. Sept. 15, 1992) (unpublished op.).[13]

In his reply, the Petitioner also contends that the state courts had disallowed a hearing on the veracity of the statements by Officers Price and Grose regarding the smell of ether. Petitioner's Reply at p. 3; *see supra* pp. 5-6. This theory is unsupportable.

At the district court level, Mr. Shouse's attorney filed a motion to suppress, arguing in part that the alleged smell of ether would not have created exigent circumstances for entry

---

[11]     Petitioner's Brief in Support at p. 3.

[12]     Petitioner's Reply to Response to Petition for Writ of Habeas Corpus at p. 3 (Oct. 23, 2006) ("Petitioner's Reply").

[13]     In *Hesselberg v. Price*, the petitioner denied that he had enjoyed a "full and fair" opportunity to litigate his Fourth Amendment claims, insisting that the district court had "failed to apply the correct standards." *Hesselberg v. Price*, 976 F.2d 740, 1992 WL 230170, Westlaw op. at 2 (10th Cir. Sept. 15, 1992) (unpublished op.). The Tenth Circuit Court of Appeals rejected the claim because: (1) the petitioner had obtained a hearing in state court on his motion to suppress, and (2) he had failed to identify any legal authority ignored by the state court. *Id.*

into the home.  Motion to Suppress Evidence and Statements at pp. 6-7, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. July 27, 2004); Supplementary Arguments to Defendant's Motion to Suppress Evidence and Statements, *passim*, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. Aug. 16, 2004).  The state district court conducted an evidentiary hearing, and there Mr. Shouse's attorney questioned Officer Price about his alleged smell of ether.  Defendant's Motion to Suppress State's Motion in Limine at pp. 31-32, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. Aug. 18, 2004) ("Transcript of Hearing on Motion to Suppress").  Once the testimony ended, Mr. Shouse's attorney argued that the alleged smell of ether did not justify entry into the home or the search.  *Id*. at pp. 51, 53-56.  The trial court disagreed and overruled the motion to suppress.  *Id.* at pp. 65-68.

Mr. Shouse's attorney filed a motion to reconsider, arguing again that the alleged odor of ether would not have justified the residential entry.  Motion to Reconsider Defendant's Motion to Suppress at pp. 3-6, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. Aug. 30, 2004).  The trial court conducted a telephonic conference on the motion to reconsider and adhered to the earlier ruling.  Court Minute, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. Aug. 31, 2004).

At trial, Mr. Shouse's attorney unsuccessfully renewed the motion to suppress, objecting to introduction of evidence obtained in the search.  Trial Transcript, Vol. I at p. 173.

Unsuccessful in state district court, Mr. Shouse's counsel argued on appeal that the police had not truly perceived an immediate danger from the alleged odor of ether.  Brief of Appellant at p. 15, *Shouse v. State*, Case No. F-2004-1032 (Okla. Crim. App. May 10, 2005). The OCCA rejected the claim.  OCCA Opinion on Direct Appeal at pp. 5-7.

Disregarding these repeated opportunities to question the truthfulness of the officers' account, Mr. Shouse asserts in his reply that the state courts had declined to provide a hearing on the truthfulness of Officers Price and Grose.  Petitioner's Reply at p. 3; *see supra* pp. 5-6. He supplies no authority for this assertion, and it is inaccurate.  Mr. Shouse had repeated opportunities to litigate the veracity of the officers' account and he simply did not succeed. *See Boles v. Neet*, 52 Fed. Appx. 104, 105-106 (10th Cir. Nov. 27, 2002) (unpublished op.).[14]

---

[14]    In *Boles v. Neet*, a petitioner claimed that officers had been untruthful in representations leading to the issuance of a search warrant.  *See Boles v. Neet*, 52 Fed. Appx. at 105.  The state courts rejected the claim, and the petitioner sought habeas relief based in part on Fourth Amendment violations leading to issuance of the search warrant.  *See id.*  The petitioner argued that he had an inadequate opportunity to litigate the issue in state court based on the trial court's refusal to provide a veracity hearing.  *See id.*  The Tenth Circuit Court of Appeals rejected the argument and explained:

> Our review of the record does not reveal any indication that [the habeas petitioner] was not provided [a full and fair opportunity to litigate his Fourth Amendment claim in state court].   He requested a veracity hearing in state court.  The trial judge held a hearing on that request and concluded that [the petitioner] had not established a justification for the hearing.  On direct review the court of appeals agreed that [the petitioner's] conclusory assertions were insufficient and that the trial court therefore did not err in denying the request.  Although [the petitioner] disagrees with that decision and with the conduct of the prosecutor at the hearing on his request, these objections do not establish that he was denied a full and fair opportunity to present his claim in the state courts.  Accordingly, we agree with  the district court that his Fourth Amendment claim is barred.

*Id.* at 106.

The issue here is not whether the state courts had correctly resolved the Fourth Amendment claims.  Instead, the dispositive issue is whether Mr. Shouse had a full and fair opportunity to litigate his Fourth Amendment challenges at trial or on direct appeal.  He clearly had such an opportunity at both stages, and the Court should decline to consider the Fourth Amendment claims.

ALLEGED ERRORS OF STATE LAW
GROUNDS TWO, THREE, FOUR, SIX, SEVEN, AND EIGHT

The Petitioner alleges legal violations involving:

- failure to comply with discovery requests,

- failure to memorialize bench conferences,

- lack of notice through the Information,

- introduction of unfairly prejudicial evidence,

- error in the jury instructions, and

- refusal to allow a surrebuttal witness.

Petitioner's Brief in Support at pp. 12-22, 27-38.

Mr. Shouse intermittently invokes Oklahoma law and the state and federal constitutions.  *See id.*  The Court should reject all of the Petitioner's theories.

I.     Standard for Relief for Claims Predicated on Violations of State Law and the State Constitution

Habeas relief does not lie solely for error under state law or the state constitution.[15] But a violation of state law or the state constitution can result in a deprivation of the Fourteenth Amendment's Due Process Clause if "'the error [is] so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Hooker v. Mullin*, 293 F.3d 1232, 1238 (10th Cir. 2002) (quoting *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997)).  The Petitioner cannot fulfill this burden.

II.    Alleged Discovery Violation

In ground two, Mr. Shouse alleges that the prosecution had failed to produce an envelope.  Petitioner's Brief in Support at pp. 12-14.  This claim does not merit habeas relief.

The envelope had been found in a trash can outside of the residence.  *See* Trial Transcript, Vol. I at p. 8.  With the envelope, the prosecution sought to prove that Mr. Shouse had lived at the residence where the drugs were found.  *See id.*  Defense counsel objected to introduction of the envelope, arguing that it had not been disclosed after a request for discovery.  *Id.* at pp. 9-10.  The trial court agreed and disallowed introduction of the envelope into evidence.  *Id.* at pp. 13-14.  However, the court allowed an officer to testify about the

---

[15]     *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)); *see also Nieto v. Sullivan*, 879 F.2d 743, 749 n.10 (10th Cir. 1989) ("We discuss only the federal constitutional claim since the assertion of violation of the State Constitution is not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)).

envelope, reasoning that Mr. Shouse had notice of "the existence of that potential testimony." *Id.* at p. 14.

According to Mr. Shouse, the state court should have gone further and disallowed any testimony about the envelope. Petitioner's Brief in Support at pp. 13-14 (acknowledging that the physical envelope was not allowed into evidence, but complaining about testimony concerning the envelope). The Court may assume *arguendo* that Officer Price's testimony could result in a due process violation if it involved unfair surprise. *See Thomas v. Gibson*, 218 F.3d 1213, 1223 (10th Cir. 2000) (declining to decide whether the Fourteenth Amendment's Due Process Clause is implicated by provisions in Oklahoma law and the Oklahoma constitution which require pretrial identification of prosecution witnesses). Even if the Due Process Clause were implicated, however, the OCCA's conclusion did not conflict with Supreme Court precedent.

The OCCA concluded that the testimony did not result in unfair surprise to Mr. Shouse. OCCA Opinion on Direct Appeal at pp. 7-9. The OCCA's conclusion was reasonable because the content of the testimony had already appeared in Officer Price's affidavit.

Mr. Shouse's counsel knew of Officer Price's affidavit for the search warrant, and that document contained detailed information about the evidence obtained in the "trash dig." The affidavit stated:

> Your affiant has been conducting an investigation of the place to be searched. This investigation has included the collecting of the trash from the place to be

searched after it was placed out for collection.  On 7-27-03, your affiant collected the trash bags from the east side of the place to be searched.  This is the area for roadside trash disposal service.  After examining the contents of the bags, you [sic] affiant found the following:

. . . .

-One letter addressed to Jerry and Joy Shouse, 201 N. Cherry, Tonkawa OK

Affidavit for Search Warrant, *State v. Shouse*, Case No. SW-2003-25 (Kay Co. Dist. Ct. Aug. 13, 2003).

At the hearing on the motion to suppress, Mr. Shouse's counsel used the affidavit to cross-examine Officer Price.  Transcript of Hearing on Motion to Suppress at p. 44.  In this cross-examination, Officer Price pointed out to defense counsel that the information about the trash digs had been contained in the search warrant affidavit.  *Id.* at p. 43.

In light of the prior information, the OCCA's conclusion was reasonable based on the evidence and Supreme Court precedent.[16]  As a result, Mr. Shouse is not entitled to habeas relief based on Officer Price's testimony about the "trash dig."  *See supra* pp. 3-4.

---

[16]     *See, e.g.*, *United States v. Cleaver*, 163 Fed. Appx. 622, 627 (10th Cir. Dec. 6, 2005) (unpublished op.) (trial court's refusal to strike a witness for a discovery violation did not deny due process when the petitioner had prior notice about the content of the testimony), *cert. denied*, __ U.S. __, 126 S. Ct. 1893 (2006); *Benson v. Martin*, 8 Fed. Appx. 927, 930-31 (10th Cir. May 7, 2001) (unpublished op.) (rejecting a due process claim based on the absence of prejudice from introduction of evidence not previously disclosed).

III.   The Trial Court's Failure to Memorialize Bench Conferences

Before the beginning of trial, the court announced that bench conferences would not appear "on the record" because personnel "[did] not have that ability at this point."  Trial Transcript, Vol. I at p. 20.  However, the court explained:

> [A]t the very next recess where the jury is not present . . . [we can] memorialize that bench conference on the record, and I can give each attorney the opportunity to embellish or correct the Court's description of what occurred at the bench conference. . . .  You might want to make yourself notes to make sure that I do get that done, because once in a while I will get past a recess without doing that, but I really try to memorialize the bench conference as we go through the trial.

*Id.*

Many of the bench conferences were not memorialized.  *See* Trial Transcript, Vols. I, II, III, *passim*.  But periodically, the court would ask whether any matters needed to be put on the record.  *See*, *e.g.*, Trial Transcript, Vol. I at p. 233; Trial Transcript, Vol. II at p. 441. Each time, the prosecutor and Mr. Shouse's attorney replied in the negative.  *See*, *e.g.*, Trial Transcript, Vol. I at p. 233; Trial Transcript, Vol. II at p. 441.[17]

For habeas relief, Mr. Shouse must show that the Supreme Court has recognized a federal constitutional right to a recording of bench conferences.  *See supra* pp. 3-4.  The

---

[17]     Under Oklahoma law, a court reporter must generally record "all proceedings" "unless excused by the judge . . . with the consent of the parties to the action."  Okla. Stat. tit. 20 § 106.4 (2001).  But the recording is unnecessary when defense counsel does not request recording of conferences and does not otherwise attempt to show injury to the defendant.  *See Petition of Dare*, 370 P.2d 846, 859-60 (Okla. Crim. App. 1962).

The record does not reflect any requests for recording of bench conferences.

Supreme Court has never recognized such a constitutional right.[18] *See Madera v. Risley*, 885 F.2d 646, 648 (9th Cir. 1989) ("There is no Supreme Court . . . authority on the due process implications of a state court's failure to record portions of a criminal trial." (footnote omitted)); *see also Barkell v. Crouse*, 468 F.3d 684, 688-89 (10th Cir. 2006) (rejecting a habeas claim based on the absence of clearly established Supreme Court precedent for an indigent defendant's right to obtain supplement proceedings when the existing record was inadequate).   As a result, Mr. Shouse's habeas claim is invalid as a matter of law.

IV.   Alleged Lack of Notice as to the Charges

In his fourth ground for relief, the Petitioner alleges a failure to supply notice of the State's eventual theory at trial.  Petitioner's Brief in Support at pp. 18-22.  The claim lacks merit.

According to the Information, Mr. Shouse was charged with:

TRAFFICKING IN ILLEGAL DRUGS, a felony, by knowingly and feloniously trafficking in illegal drugs in Kay County, by manufacturing a controlled dangerous substance, to wit:   methamphetamine . . .   in the following quantity in excess of 20 grams.

Information at p. 1, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. filed Aug. 13, 2003) (emphasis in original); *see infra* pp. 16, 19.

---

[18]   Even in the circuit courts, prejudice is considered necessary to disturb a conviction based on a failure to record portions of the trial.  *See Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) ("Because Green has failed to assert specific facts explaining why the alleged [failure to record all portions of the trial] prejudiced the outcome of his trial, his claim is without merit."); *Madera v. Risley*, 885 F.2d 646, 649 (9th Cir. 1989) (holding that the habeas relief requires a showing of prejudice from the lack of a record); *see also United States v. Haber*, 251 F.3d 881, 890 (10th Cir. 2001) (holding that for reversal, noncompliance with the Court Reporter's Act must result in prejudice).

At the conclusion of the State's case, defense counsel moved to dismiss the charges on grounds that the State had failed to prove "manufacturing."  Trial Transcript, Vol. II at pp. 383-90.  The prosecutor responded that:

- the State had charged "trafficking," which could be proven by either manufacturing or possession,[19] and

- substantial evidence existed regarding possession.[20]

The trial court ruled in favor of the prosecutor, stating:

> Well, the real test on the question of the wording of the Information is whether the defendant is surprised by the charge that is proven by the evidence.  I would agree with counsel that the defendant has been charged from the inception with trafficking in methamphetamine.  And manufacturing is not an element of trafficking.  It is one way that it occurs.  In fact, the OUJI on trafficking in illegal drugs gives an alternate wording of the elements, either manufacturing or possession.

> [Thus] I do not believe that the defendant has been put at any disadvantage by the inclusion of the word manufacturing.

*Id.* at p. 393.  The OCCA agreed,[21] and this conclusion was reasonable in light of the record.

The Sixth and Fourteenth Amendments entitle a defendant to fair notice of the criminal charges.  *See Hunter v. State of New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990).

---

[19]     Trial Transcript, Vol. II at p. 391.

[20]     Trial Transcript, Vol. II at p. 391.

[21]     OCCA Opinion on Direct Appeal at pp. 10-12.

But federal habeas relief is available only if prejudice had arisen from the variance between the trial evidence and the facts alleged in the Information. *Id.* at 599. Thus, even if a defendant is convicted on charges differing from those in the Information, no due process violation exists if the defendant was aware of the facts underlying the charges. *See Parks v. Hargett*, 188 F.3d 519, 1999 WL 157431, Westlaw op. at 3 (10th Cir. Mar. 23, 1999) (unpublished op.) (adequate notice existed when a defendant was made aware of all facts surrounding the charges through the Information and a preliminary hearing).

In relevant part, Oklahoma law defines "trafficking in illegal drugs" as "[k]nowingly distribut[ing], manufactur[ing], bring[ing] into this state or possess[ing] [methamphetamine] . . . ." Okla. Stat. tit. 63 § 2-415(B)(1) (2001). Invoking this law, the State charged Mr. Shouse with "trafficking" based on the manufacture of methamphetamine. *See supra* pp. 14-15; *infra* p. 19. But at trial, substantial evidence existed regarding "trafficking" through the possession of methamphetamine. *See infra* pp. 25-28. Mr. Shouse would be hard-pressed to suggest surprise in light of the breadth of the charge and the State's apparent intention to present evidence of possession.

For example, in the "Affidavit for Search Warrant," Officer Price stated that police had expected to find evidence of manufacturing and possession of methamphetamine. Affidavit for Search Warrant at p. 1, *State v. Shouse*, Case No. SW-2003-25 (Kay Co. Dist. Ct. Aug. 13, 2003). As a result, the warrant authorized a search for evidence involving both

the manufacture and possession of methamphetamine.  Warrant of Search and Seizure at p. 1,
*State v. Shouse*, Case No. SW-2003-25 (Kay Co. Dist. Ct. Aug. 13, 2003).

In light of the State's broad investigation, the Petitioner submitted proposed jury
instructions which included a definition of "possession" and instructions on lesser-included
offenses involving "possession with intent to distribute" and "possession of
methamphetamine."  Proposed Jury Instructions at pp. 4, 21, *State v. Shouse*, Case No. CF-
2003-384 (Kay Co. Dist. Ct. Aug. 27, 2004).

Mr. Shouse's counsel clearly anticipated a trial involving allegations of possession,
as well as manufacture, of methamphetamine.  Thus, on the eve of trial, Mr. Shouse's
attorney moved to suppress the envelope found in the trash outside of the residence.  *See
supra* pp. 6-7.  There the attorney argued:  "He's accused of trafficking, which I think I've
seen in our previous conference the instruction I anticipate is possession of - - knowing
possession of more than - -  or an amount greater than 20 grams."  Trial Transcript, Vol. I at
p. 10.

The trial court ultimately concluded:

I do believe that a[n] element of trafficking is possession of this sum of
methamphetamine.  As so whether the defendant was . . . a resident or a
frequent occupant of this particular home is some - - is relevant to the issue of
whether he possessed the illegal drugs that were allegedly in the home, and,
therefore, I will allow evidence of the - - [envelope].

*Id.* at p. 13.

Based on this record, the OCCA concluded that the State's change in theory - trafficking through possession, rather than manufacture, of drugs - did not result in unfair surprise.  OCCA Opinion on Direct Appeal at pp. 10-12; *see supra* p. 15.  This conclusion:

- involved a reasonable assessment of the evidence and the Information[22] and

- did not run afoul of Supreme Court precedent.[23]

Thus, the Court should reject the habeas claim.

V.    <u>The Admission of Allegedly Prejudicial Evidence</u>

In ground six, Mr. Shouse alleges that the trial court should have excluded evidence of:

- a "methamphetamine lab"[24] and

- night-vision goggles.

Petitioner's Brief in Support at pp. 27-31.   The Petitioner also points to an alleged "evidentiary harpoon" consisting of testimony that when he was found, he looked like "he had been caught with his hand in the cookie jar."  *Id.* at p. 28.  According to the Petitioner,

---

[22]    *See supra* p. 3.

[23]    *See supra* pp. 3-4.

[24]    According to Mr. Shouse, evidence of a "methamphetamine lab" included testimony about:

- unknown liquid and coffee filters,

- blister packs like those containing pseudoephedrine tablets, and

- the "smell" of a working methamphetamine lab.

Petitioner's Brief in Support at pp. 27-30.

this evidence was irrelevant and unfairly prejudicial. *Id.* at pp. 27-32. The Court should reject Mr. Shouse's arguments.

Under Oklahoma law, evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Okla. Stat. tit. 12 § 2401 (2001). But "[r]elevant evidence" may be inadmissible if it is unfairly prejudicial. *See* Okla. Stat. tit. 12 § 2403 (2001). Evidence is unfairly prejudicial when it "tends to elicit an emotional rather than rational judgment by the jury." *Conover v. State*, 933 P.2d 904, 913 (Okla. Crim. App. 1997) (citations omitted).

Mr. Shouse was charged with trafficking through the manufacture of methamphetamine. *See supra* pp. 14-16, 19. While the State ultimately relied on evidence of possession,[25] the prosecutor went to trial advancing a theory of trafficking through the manufacture of methamphetamine.[26] The prosecutor was entitled to support this theory with evidence that the Petitioner had at least some of the products necessary for a working methamphetamine lab.[27]

---

[25]     *See infra* pp. 27-28.

[26]     *See supra* pp. 14-16, 19.

[27]     *See United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991) (evidence that the defendant had "tools of the trade" was relevant to prove distribution of an illegal substance and was not unfairly prejudicial); *see also United States v. Spillman*, 87 Fed. Appx. 125, 127-28 (10th Cir. Jan. 29, 2004) (unpublished op.) (upholding admission of testimony about the presence of blister packs, as they were probative of the defendant's role in the distribution of methamphetamine).

The Petitioner also complains about the admission of testimony involving his counter-surveillance through the use of night-goggles.  Petitioner's Brief in Support at pp. 29-30.  Such testimony did not render the trial fundamentally unfair.  *See United States v. Gil*, 58 F.3d 1414, 1421-22 (9th Cir. 1995) (upholding testimony regarding the defendant's counter-surveillance, as the probative value outweighed any prejudice).

While this evidence was potentially damaging to Mr. Shouse, it did not tend to suggest a finding of guilt on a improper basis.  *See supra* p. 19.  *A fortiori*, the Petitioner cannot show a due process violation through introduction of the evidence.

Likewise, Mr. Shouse is not entitled to federal habeas relief based on an alleged "evidentiary harpoon."  *See supra* p. 18.  "[A]n 'evidentiary harpoon' is a metaphorical term used to describe an attempt by a government witness to deliberately offer inadmissible testimony for the purpose of prejudicing the defendant."  *United States v. Cavely*, 318 F.3d 987, 996 n.2 (10th Cir. 2003) (citation omitted).  In Oklahoma, an "evidentiary harpoon" exists only when the witness voluntarily "inject[s] information indicating other crimes." *Bruner v. State*, 612 P.2d 1375, 1378-79 (Okla. Crim. App. 1980).  No one "harpooned" Mr. Shouse at his trial.

Officer Jon Boyd testified that when officers entered the residence, Mr. Shouse's expression was like "he had been caught with his hand in the cookie jar."  Trial Transcript, Vol. II at p. 249; *see supra* p. 18.  This description of the Petitioner came in response to a

direct question,[28] and Officer Boyd simply described Mr. Shouse's appearance when confronted by the police.[29]  By definition, Officer Boyd's testimony did not constitute an "evidentiary harpoon" and introduction of the evidence did not deprive Mr. Shouse of due process.[30]

VI.   The Trial Court's Alleged Error in Instructing the Jury to Disregard Testimony Concerning the Validity of the Warrantless Entry

During a recess, the trial court expressed concern over both parties' questioning concerning the validity of a warrantless entry into the residence.  Trial Transcript, Vol. I at pp. 233-34.  The prosecutor explained that she had anticipated a defense attack on the warrantless entry and was seeking to address the issue first.  *Id.* at p. 234.  The defense attorney responded that she felt the State had opened the door.  *Id.* at p. 235.  The trial court admonished both parties, stating:

> Well, I will tell both parties I intend to give an instruction in the morning, an admonition to the jury, that tells them that the question of the propriety of the police entering on the morning in question and the necessity or the propriety of obtaining the search warrant at the time they did is not a matter for their consideration in the least and that they should essentially

---

[28]    Trial Transcript, Vol. II at p. 249.

[29]    *See*, *e.g.*, *Romano v. State*, 909 P.2d 92, 107 (Okla. Crim. App. 1995) ("[Police Officer] could properly testify to his direct observations of Appellant's [trembling and dropping of head] in reaction to the questioning.").

[30]    *See Tafoya v. Tansy*, 9 Fed. Appx. 862, 873-74 (10th Cir. May 24, 2001) (unpublished op.) (holding that prosecutors did not commit a due process violation when they remarked in opening statements that the defendant had been "'caught with his hand in the cookie jar'"); *see also Smith v. Gibson*, 197 F.3d 454, 460 (10th Cir. 1999) (rejecting a habeas claim involving an alleged "evidentiary harpoon" because the testimony did not render the trial fundamentally unfair).

ignore all of the testimony or evidence that has been presented to them on that issue to this point.

Again, I don't - - we're not going to suggest to the jury that they have the duty, authority, or power to relitigate that issue on an issue that clearly is not within their realm of authority.

*Id.* at pp. 235-36.

The next morning the trial court instructed the jury:

One matter I thought of last night was the fact that in some of the questions asked yesterday there was questions concerning the necessity of a search warrant, the time of the search warrant, whether there was an entry before the search warrant, those type of things. I just wanted to advise the jury that those are matters of law. The timing, the necessity, the - - what can be conducted on a search warrant, those type of things, those are questions of law that are presented to a court in - - throughout the case and are not things that the jury needs to consider.

When you go to deliberate your case, you will be told the elements of the crime that you have to find have been proven, each element beyond a reasonable doubt, and those will be the things that you really deliberate on and make decisions on, whether these elements have been proven. But those other questions really are irrelevant for your purposes, and you can simply ignore those - - those remarks.

Trial Transcript, Vol. II at pp. 244-45.

According to Mr. Shouse, this instruction was prejudicial because it "improperly gave a seal of approval to the warrantless search . . . and implied that defense counsel was wrong in exploring the issue . . . ." Petitioner's Brief in Support at p. 35. The Petitioner's allegation lacks merit.

Generally, errors relating to jury instructions in a state criminal trial do not support federal habeas relief "unless they are so fundamentally unfair as to deprive petitioner of a fair

trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citation omitted). Thus, "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (citation omitted). The petitioner bears a heavy burden to establish constitutional error based on an erroneous jury instruction. *See Nguyen v. Reynolds*, 131 F.3d at 1357.

The trial court did not tell the jury that the search was proper. Instead, the judge simply pointed out that the legality of the search was a matter for the court rather than the jury. The trial judge did not address any specific rulings on the warrantless entry, and both parties asked questions on the subject. *See* Trial Transcript, Vol. I at pp. 169-70, 181-84, 216, 220-22. Thus, Mr. Shouse is wrong when he argues that the trial court had implied error on the part of the defense attorney and the habeas claim is invalid.

VII.    The Trial Court's Refusal to Allow a Surrebuttal Witness

Joy Hightower testified that after being taken into custody, she told Officer Price that she owned all of the drugs in the home. Trial Transcript, Vol. II at p. 417. Rather than deny the purported statement, the prosecutor attempted to discredit the witness on grounds that she had made conflicting statements. *See id.* at pp. 425-30; *see also* Trial Transcript, Vol. III at pp. 477-79, 490-94. When the testimony ended, the Petitioner's attorney asked to recall Officer Price as a surrebuttal witness to confirm that Ms. Hightower had taken responsibility for the drugs. Trial Transcript, Vol. III at pp. 462-63.

The trial court denied the request, reasoning that:

- the calling of a surrebuttal witness was only allowed when "there's true surprise raised in rebuttal testimony" and

- the Petitioner knew that Ms. Hightower had made the statement to Officer Price and that the State would present testimony involving the conflicting statements.

*Id.* at 464.

In Oklahoma, "[t]he admission of rebuttal evidence is committed to the discretion of the trial court." *Naum v. State*, 630 P.2d 785, 788 (Okla. Crim. App. 1981). The court can exercise this discretion to disallow surrebuttal testimony when it would not directly rebut evidence and tend to be cumulative. *See id.*

Under this legal standard, the trial court could reasonably disallow surrebuttal testimony by Officer Price. No one disputed Ms. Hightower's testimony that she had told Officer Price that she owned the drugs. In fact, a State's witness confirmed that Ms. Hightower "had spoken with police and . . . had made comments along the lines that the drugs in [the residence] all belonged to her . . . ." Trial Transcript, Vol. III at p. 494. With the existence of this evidence, the denial of surrebuttal testimony by Officer Price did not render the trial fundamentally unfair. This claim should be rejected.

VIII.   <u>Summary</u>

The Petitioner has not shown that the violation of a state law "'was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the

essence of due process.'" *Supra* p. 10 (citation omitted).  As a result, the Court should deny habeas relief on these grounds.

ALLEGED INSUFFICIENCY OF THE EVIDENCE
GROUND FIVE

In his fifth ground for relief, Mr. Shouse alleges insufficiency of the evidence. Petitioner's Brief in Support at pp. 22-26.  The Court should reject this claim.

I.    Standard for Sufficiency of the Evidence

When the sufficiency of evidence is challenged in a habeas action, the federal district court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This review is "sharply limited," and federal courts are not to weigh conflicting evidence or consider the credibility of witnesses. *See Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996).  "The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not, is not considered." *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003) (citation omitted).

The standard for sufficiency of the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 & n.16 (1979).  Therefore, the Court must consider Oklahoma law with regard to the elements of the claim.[31]

---

[31]    The Petitioner relies on Oklahoma law not only for the elements of the offense, but also for

the applicable standard.  Petitioner's Brief in Support at p. 26; Petitioner's Reply at pp. 10-11. Relying on Oklahoma law, Mr. Shouse contends that circumstantial evidence is sufficient only if all reasonable hypotheses point to guilt.  Petitioner's Reply at pp. 10-11.  This approach is misguided because:

- federal law governs the applicable standard and

- state law mirrors federal law on the standard for sufficiency of the evidence.

First, *Jackson v. Virginia* applies to the exclusion of state procedural law.  *See Parker v. Scott*, 394 F.3d 1302, 1314 (10th Cir. 2005) (applying *Jackson* in habeas proceedings and rejecting application of Oklahoma's requirement for corroboration of children's testimony); *see also Watson v. Howard*, 123 Fed. Appx. 910, 917-18 (10th Cir. Feb. 17, 2005) (unpublished op.) (applying *Jackson* in habeas proceedings and rejecting application of Oklahoma's requirement of independent corroboration of accomplice testimony), *cert. denied*, __ U.S. __, 126 S. Ct. 45 (2005).

Second, Oklahoma follows the *Jackson* standard even when circumstantial evidence is involved.  *See Easlick v. State*, 90 P.3d 556, 559 (Okla. Crim. App. 2004); *Hogan v. State*, 139 P.3d 907, 919 (Okla. Crim. App. 2006), *cert. denied*, __ U.S. __, __ S. Ct. __, 2007 WL 37054 (2007). Prior to May 2004, Oklahoma courts applied a stringent standard when the State relied on circumstantial evidence.  *See, e.g.*, *Hooks v. State*, 19 P.3d 294, 305 (Okla. Crim. App. 2001).  Such evidence sufficed for a conviction only if every reasonable hypothesis pointed to the defendant's guilt.  *See, e.g.*, *id.* ("Circumstantial evidence must exclude every reasonable hypothesis other than guilt." (footnote omitted)).  On May 3, 2004, Oklahoma abandoned this approach and stated that the *Jackson* standard would govern even when circumstantial evidence is involved.  *See Easlick v. State*, 90 P.3d at 557, 559.

The Petitioner points out that at the time of his arrest, Oklahoma still followed the relatively stringent test for circumstantial evidence.  Petitioner's Reply at p. 10.  But the OCCA has applied *Easlick* to all appeals decided after May 3, 2004.  *See Hogan v. State*, 139 P.3d 907, 919 (Okla. Crim. App. 2006) ("the language in *Easlick* clearly expressed this Court's intent to apply the *Spuehler* standard in all cases reviewed on appeal post *Easlick*"), *cert. denied*, __ U.S. __, __ S. Ct. __, 2007 WL 37054 (2007).

Mr. Shouse contends in his reply that application of the new test is barred by the *ex post facto* clause when the arrest had preceded *Easlick*.  Petitioner's Reply at p. 11.  This argument is invalid because:

- assertion of the theory in the reply brief was too late and

- *Easlick* did not criminalize conduct or change the punishment for any offenses.

26

II.     Elements of Trafficking in Illegal Drugs

        In Oklahoma, the elements of the trafficking charge were:

●       knowingly;

●       distributing, manufacturing, bringing into Oklahoma, or possessing;

●       twenty grams or more of a mixture or substance containing a detectable amount of;

●       methamphetamine.

See Okla. Stat. tit. 63 § 2-415(B)(1) & (C)(4) (2001); OUJI-CR 6-13 (2nd ed.).

III.    Evidence at Trial

        According to the testimony, Mr. Shouse was apprehended while standing next to a plate containing five grams of methamphetamine.  *See supra* p. 1.  Roughly 23 grams were found in a camera case within the Petitioner's proximate vicinity.  *See id.*  Officer Price testified that he had found mail with the Petitioner's name on it at the residence and had often seen Mr. Shouse and his vehicle at the residence.  Trial Transcript, Vol. I at p. 166.  Though circumstantial, this evidence was sufficient to prove dominion over the residence, which in turn supported a finding of constructive possession of the methamphetamine in the camera

---

*See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) ("we [do not] consider arguments raised for the first time in a reply brief"); *Sallahdin v. Gibson*, 275 F.3d 1211, 1228 (10th Cir. 2002) (holding that application of a judicial decision did not create an *ex post facto* violation when it addressed an issue of state criminal procedure and did not redefine any crimes, defenses, or punishments).

bag and on the plate.  *See*, *e.g.*, *United States v. Fisher*, 33 Fed. Appx. 933, 939 (10th Cir. Apr. 10, 2002) (unpublished op.).[32]

Mr. Shouse points to the testimony of Joy Hightower, who claimed that the Petitioner did not live at the residence and did not know about the methamphetamine.  Petitioner's Brief in Support at p. 24.  But on habeas review, the federal court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *see supra* p. 25.  Based on the testimony, the fact-finder could reasonably conclude that the Petitioner had knowingly possessed at least twenty grams of methamphetamine.  Thus, sufficient evidence existed to support the trafficking conviction.

## ALLEGED PROSECUTORIAL MISCONDUCT
## GROUND NINE

In his ninth ground for relief, Mr. Shouse alleges prosecutorial misconduct. Petitioner's Brief in Support at pp. 39-41.  This claim does not warrant federal habeas relief.

---

[32]     In *United States v. Fisher*, 33 Fed. Appx. 933 (10th Cir. Apr. 10, 2002) (unpublished op.), the petitioner was charged with possession of methamphetamine with intent to distribute.  *See United States v. Fisher*, 33 Fed. Appx. at 938.  According to the evidence, the petitioner did not own the home.  *See id.* at 939.  Nevertheless, sufficient evidence existed concerning constructive possession of the methamphetamine.  For example, the court noted that the petitioner was arrested in the home and police officers had found mail addressed to the petitioner at that residence. *See id.* From this evidence, the court concluded that "a rational trier of fact [could] conclude that [the petitioner had] exercised dominion and control over the . . . residence and that, as a result, he constructively possessed the methamphetamine that the police officers discovered there."  *Id.*

I.      Standard for Habeas Relief on Claims Involving Prosecutorial Misconduct

In considering a habeas claim involving prosecutorial misconduct, the Court must determine whether a constitutional violation has taken place "which so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994) (citation omitted).  If a prosecutor has acted improperly, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (citations omitted).  In conducting this inquiry, the Court should view the prosecutor's statements in context, considering "whether the prosecutor's statements plausibly 'could have tipped the scales in favor of the prosecution.'" *Fero v. Kerby*, 39 F.3d at 1474 (quoting *Hopkinson v. Shillinger*, 866 F.2d 1185 (10th Cir. 1989)).

II.     Alleged Misstatement of the Facts

The prosecutor asked Ms. Hightower about a recorded conversation that she had with Mr. Shouse on the night of their arrest.  Trial Transcript, Vol. II at pp. 425-28.  The recording was never entered into evidence.  *See id.*  But during closing argument, the prosecutor commented that Ms. Hightower had made certain statements in that conversation.  Trial Transcript, Vol. III at p. 530.  The Petitioner objected on grounds that no evidence had existed about the making of these statements.  *See id.*  The trial court sustained the objection and admonished the jury to disregard the argument.  *See id.*  The Court should reject the habeas claim.

"The jury is presumed to follow its instructions" even when a misleading argument has been presented. *Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)). Thus, the Court should presume that the jurors followed the trial judge's admonition to disregard the prosecutor's comments. With this presumption, the prosecutor's remarks could not have fatally infected the trial with unfairness. *See Battenfield v. Gibson*, 236 F.3d 1215, 1225 (10th Cir. 2001) (rejecting a habeas claim, involving prosecutorial misconduct, because the trial court had "sustained the objection and admonished the jury to disregard the comment" (citation omitted)).

Habeas relief on this ground is unwarranted in light of the trial court's ruling, sustaining the objection and admonishing the jury to disregard the prosecutor's comment.

## CUMULATIVE ERROR
## GROUND TEN

In his tenth ground for relief, the Petitioner alleges the denial of constitutional rights through "cumulative error." Petitioner's Brief in Support at pp. 42-43. Mr. Shouse is not entitled to federal habeas relief based on cumulative error.

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Miller v. Mullin*, 354 F.3d 1288, 1301 (10th Cir. 2004) (*per curiam*).

To count, each error must involve a violation of the federal constitution rather than state law.[33]  "'Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors.'"  *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (citation omitted).

The Petitioner has not shown two or more constitutional errors.  *See supra* pp. 5-30; *infra* pp. 31-33.  Thus, the Court should decline to award habeas relief based on cumulative error.

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
## GROUND ELEVEN

In the eleventh ground for relief, the Petitioner alleges that his appellate counsel was ineffective for failure to challenge the life sentence as "excessive and unconstitutional."  Petitioner's Brief in Support at pp. 44-49.  Liberally interpreted, Mr. Shouse's claim also suggests that his appellate counsel should have challenged the Oklahoma legislature's authority to set a mandatory sentence for the trafficking conviction.  *Id.* at p. 49.

I.   Standard of Ineffective Assistance on Appeal

Mr. Shouse must show that his attorney's representation in the appeal was deficient and prejudicial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for

---

[33]      *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Because we find no single constitutional error, we also must reject Parker's argument that cumulative error resulted."); *Hain v. Gibson*, 287 F.3d 1224, 1244 (10th Cir. 2002) ("Although Hain has asserted a cumulative error argument, it is without merit since he has failed to identify multiple constitutional violations arising at trial." (citation omitted)).

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, prejudice cannot be established if an omitted issue lacks merit. *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) (if an issue lacks merit, its omission on appeal cannot reflect ineffective assistance).

II.   Failure to Challenge the Excessiveness of the Sentence

According to Mr. Shouse, his appellate attorney should have argued that his sentence of life without parole was excessive and disproportionate to the crime committed. *See supra* p. 31. But the Petitioner was convicted of trafficking after two prior felony convictions under the Oklahoma Uniform Controlled Dangerous Substances Act. *See supra* p. 2; *see also* Supplemental Information for After Felony Conviction, *State v. Shouse*, Case No. CF-2003-384 (Kay Co. Dist. Ct. undated). In these circumstances, the OCCA would likely have rejected an excessive sentence claim[34] and the Petitioner cannot show a reasonable probability that he would have succeeded on appeal if his attorney had raised the issue.[35]

---

[34]   *See Dufries v. State*, 133 P.3d 887, 891 (Okla. Crim. App. 2006) (holding that a mandatory sentence of life imprisonment, without the possibility of parole, is not excessive for a conviction involving trafficking in a controlled dangerous substance after two drug-related convictions); *see also Dodd v. State*, 879 P.2d 822, 827 (Okla. Crim. App. 1994) (upholding a mandatory sentence of life without parole for conspiracy to traffic in illegal drugs).

[35]   The Petitioner asserts that because Okla. Stat. tit. 63 § 2-415(D)(3) is unconstitutional, the federal court should proceed "under the doctrine of eminent domain." Petitioner's Brief in Support at p. 49. Mr. Shouse has confused the doctrine of eminent domain. This principle refers to the Takings Clause of the Fifth Amendment, which has no bearing on the constitutionality of Mr. Shouse's life sentence.

III.     Failure to Challenge the Legislature's Authority to Set a Mandatory Sentence

According to Mr. Shouse, his appellate attorney should have challenged the mandatory life sentence on grounds involving separation of powers. Petitioner's Brief in Support at p. 49. The claim is invalid as a matter of law.

The OCCA has recognized that "mandatory sentences in non-capital cases are permissible." *Dodd v. State*, 879 P.2d 822, 826 (Okla. Crim. App. 1994) (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991)). As a result, the court has upheld the mandatory sentence of life imprisonment without parole for trafficking in illegal drugs. *See id.*; *see also supra* note 34. Because the claim would have failed on direct appeal, appellate counsel had no duty to make the challenge.[36]

---

[36]     Mr. Shouse did not present a substantive claim involving the constitutionality of mandatory sentences. Instead, Mr. Shouse framed the issue solely as one involving ineffective assistance of appellate counsel for the failure to raise the issue in the direct appeal. *See* Petitioner's Brief in Support at p. 49.

Even if Mr. Shouse had presented a separate claim on the constitutionality of mandatory sentences, habeas relief would have been unavailable. The Supreme Court has recognized that Congress enjoys "the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States*, 500 U.S. 453, 467 (1991) (citations omitted). As a result, the Supreme Court has "never invalidated a penalty mandated by a legislature based on the length of sentence . . . ." *Harmelin v. Michigan*, 501 U.S. 957, 1007 (1991) (Kennedy, J., concurring) (citation omitted). Based on the Supreme Court's precedents, the Tenth Circuit Court of Appeals has consistently held that mandatory sentences do not violate the separation of powers doctrine. *See United States v. Gurule*, 461 F.3d 1238, 1246 (10th Cir. 2006) ("we have generally recognized that mandatory sentences do not violate the separation of powers principle"); *see also United States v. Curtis*, 344 F.3d 1057, 1064-65 (10th Cir. 2003) (rejecting the defendant's separation of powers challenge based on the mandatory consecutive sentencing provision of 18 U.S.C. § 924(c)(1)(D)(ii)); *United States v. Cunningham*, 191 Fed. Appx. 670, 675 (10th Cir. July 28, 2006) (unpublished op.) ("the application of the mandatory minimum sentence of 180 months imprisonment to Cunningham did not violate the separation of powers doctrine").

REQUEST FOR AN EVIDENTIARY HEARING

Mr. Shouse requests an evidentiary hearing to "litigate and adjudicate the issues raised in this federal habeas petition."  Petitioner's Brief in Support at p. 51; *see* Petitioner's Reply at p. 1.  His request should be denied.

Federal law restricts the availability of evidentiary hearings when a habeas petitioner fails to develop the factual basis of his habeas claim in state court.  *See* 28 U.S.C. § 2254(e)(2) (2000).  "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  Ordinarily, a petitioner will be considered "diligent" only if he had requested "an evidentiary hearing in state court in the manner prescribed by state law."  *Id.* at 437.

The record does not reflect diligence by Mr. Shouse in the development of the underlying facts in state court.  In state court, an evidentiary hearing may have been available in the direct appeal or post-conviction proceedings.[37]  Nonetheless, the Petitioner did not seek

---

[37]     *See* Okla. Stat. tit. 22 § 1084 (2001) (post-conviction application); Rule 3.11(A), Rules of the Oklahoma Court of Criminal Appeals (direct appeal).

an evidentiary hearing on direct appeal[38] or in his application for post-conviction relief.[39]

Thus, to justify an evidentiary hearing, the Petitioner must show that:

(A)     the claim relies on - -

  (i)      a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

  (ii)     a factual predicate that could not have been previously discovered through the exercise of due diligence; and,

(B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B) (2000).

Mr. Shouse cannot satisfy any of these requirements.  For example, he does not rely on:

- a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court or

- a factual predicate that had been impossible to learn earlier through the exercise of due diligence.

---

[38]     *See* Brief of Appellant, *passim*, *Shouse v. State*, Case No. F-2004-1032 (Okla. Crim. App. May 10, 2005).

[39]     *See* Application for Post Conviction Relief, *passim*, *Shouse v. State*, Case No. CF-2003-384 (Kay Co. Dist. Ct. Mar. 17, 2006); *see also St. Louis Baptist Temple, Inc. v. Federal Deposit Insurance Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("it has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (citations omitted)).

Similarly, the Petitioner cannot show that the facts underlying his claims would have likely led to an acquittal but for the alleged constitutional errors. *See supra* pp. 5-31.

As a result, Mr. Shouse's lack of diligence in state court precludes an evidentiary hearing in connection with the habeas application.

RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons discussed above, the undersigned recommends denial of the requests for an evidentiary hearing and issuance of a writ of habeas corpus.

The Petitioner can object to this report and recommendation. To do so, Mr. Shouse must file an objection with the Clerk of this Court. The deadline for objections is February 14, 2007. *See* W.D. Okla. LCvR 72.1(a). The failure to timely object would foreclose appellate review of the suggested rulings. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

STATUS OF THE REFERRAL

The referral is terminated.

Entered this 25th day of January, 2007.

*Robert E. Bacharach*

Robert E. Bacharach
United States Magistrate Judge

36